# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**CECIL E. SCOTT,**
**Claimant Below, Petitioner**

**FILED**

May 7, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 17-0672** (BOR Appeal No. 2051767)
               (Claim No. 2013028581)

**MERCER COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Cecil E. Scott, by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Mercer County Board of Education, by Jillian L. Moore, its attorney, filed a timely response.

The issue on appeal is the addition of right cubital tunnel syndrome and right carpal tunnel syndrome to the claim as well as authorization of an EMG. The claims administrator denied an EMG of the right upper extremity on April 22, 2016. On July 28, 2016, it denied the addition of right cubital tunnel syndrome and right carpal tunnel syndrome to the claim. The Office of Judges affirmed the decisions in its December 28, 2016, Order. The Order was affirmed by the Board of Review on June 23, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

 Mr. Scott, a plumber, was injured in the course of his employment on April 22, 2013, while lifting pipe dies. A treatment note by Steven O'Saile, M.D., that day indicates Mr. Scott was lifting a pipe when it was dropped and he felt his shoulder jerk. Dr. O'Saile diagnosed right shoulder traumatic rotator cuff tear with acromioclavicular joint arthritis. The claim was held compensable for sprain/strain of the shoulder and upper arm and later for rotator cuff sprain/strain and rotator cuff tear.

1

Mr. Scott underwent a right shoulder rotator cuff repair and a right shoulder subacromial decompression performed by Dr. O'Saile on July 26, 2013. A right shoulder MRI taken on April 27, 2014, showed a full thickness supraspinatus and infraspinatus tendon tear with significant retraction of the torn tendons. It also showed tendinopathy and a new superior labral tear. Authorization for an arthroscopy of the right shoulder with labral tear and rotator cuff tear was approved and Mr. Scott underwent a second surgery on June 2, 2014. The post-operative diagnoses were right shoulder superior labral tear and right shoulder rotator cuff tear.

James Dauphin, M.D., performed a physician review on September 10, 2014, in which he recommended that a request for an EMG to evaluate the ulnar nerve in the elbow be denied. He noted that the allowed diagnosis in the claim is for the shoulder. He found that the ulnar nerve was not injured on the date of injury and the elbow is not part of the claim. Dr. Dauphin further noted that Mr. Scott's alleged onset of symptoms began many months after the date of injury. The claims administrator denied a request for an EMG of the right upper extremity on September 16, 2014.

In an independent medical evaluation on September 23, 2014, Jerry Scott, M.D., concluded that Mr. Scott had reached maximum medical improvement for the compensable injury. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), he assessed 5% impairment. He then apportioned 3% to preexisting conditions and 2% to the compensable injury. In a report dated December 2, 2014, Dr. Scott stated that he had reviewed additional records and concluded that the request for an EMG/nerve conduction study of the right upper extremity was not causally related to nor necessary treatment for the compensable injury.

In a July 14, 2015, independent medical evaluation, Bruce Guberman, M.D., found that Mr. Scott had reached maximum medical improvement. He found signs and symptoms consistent with right ulnar neuropathy of the elbow that were attributable to the compensable injury. Dr. Guberman recommended an EMG/nerve conduction study of the right upper extremity. He assessed 7% impairment.

In a February 29, 2016, treatment note, Gary McCarthy, M.D., diagnosed Mr. Scott with right traumatic rupture of the rotator cuff, right cubital tunnel syndrome, and right carpal tunnel syndrome. A right shoulder x-ray taken that day showed narrowing of the subacromial space and mild osteoarthritic changes in the acromioclavicular joint. Dr. McCarthy referred him for an EMG. The claims administrator denied the request for an EMG/nerve conduction study of the right upper extremity on March 25, 2016.

A right shoulder MRI taken on April 13, 2016, showed supraspinatus and infraspinatus tears with partial retraction, fatty atrophic changes of the muscles, subscapularis tendinopathy with probable partial tear, and visible longhead of the biceps tendon. There were also moderate acromioclavicular degenerative changes. In a treatment note a few weeks later, Dr. Scott diagnosed laceration of the muscles and tendons of the right rotator cuff. Dr. McCarthy then

completed a diagnosis update on May 17, 2016, in which he requested that right cubital tunnel syndrome and right carpal tunnel syndrome be added to the claim.

Syam Stoll, M.D., performed a physician review on June 18, 2016, in which he determined that the diagnosis of traumatic rupture of the rotator cuff should not be added to the claim as it was not medically supported. He also found that the diagnoses of carpal tunnel syndrome and cubital tunnel syndrome were not causally related to the compensable injury. He stated that Mr. Scott sustained an injury to his shoulder and the elbow was not involved. He also noted that the onset of symptoms for carpal and cubital tunnel syndrome was sixteen months after the compensable injury.

In an August 1, 2016, independent medical evaluation, Mark Baratz, M.D., diagnosed massive right rotator cuff tear and right cubital tunnel syndrome. He opined that the rotator cuff tear was related to the compensable injury but found no relationship between Mr. Scott's cubital tunnel syndrome and the compensable injury. Dr. Baratz further stated that he saw no evidence of carpal tunnel syndrome.

The claims administrator denied a request for an EMG of the right upper extremity on April 22, 2016. On July 28, 2016, it denied the addition of right cubital tunnel syndrome and right carpal tunnel syndrome to the claim. The Office of Judges affirmed the decisions in its December 28, 2016, Order. It found that Mr. Scott was injured while lifting pipes off of a truck. He slipped off the truck and his arm and shoulder were jerked. He was initially seen by Dr. O'Saile and neither the wrist nor elbow were mentioned at that time. Elbow and wrist symptoms did not appear until July of 2014, over a year after the compensable injury occurred. The Office of Judges found that the etiology of Mr. Scott's alleged cubital and carpal tunnel syndrome has been addressed by Drs. Dauphin, Scott, Stoll, and Baratz. None of those physicians found a causal connection between the compensable injury and the complaints of carpal and cubital tunnel syndrome.

The Office of Judges further determined that the jerking/pulling injury described on the initial report of injury is not the type of injury which would produce stress on either the elbow or wrist. Further, Mr. Scott's primary care provider has not provided a detailed explanation to explain how the compensable injury caused carpal or cubital tunnel syndrome. The Office of Judges also found that the diagnoses of cubital and carpal tunnel syndrome have not even been confirmed by electrodiagnostic testing, as the request for such was denied by the claims administrator. The Office of Judges determined that Mr. Scott did not testify concerning the compensable injury or why he believes his elbow and wrist were injured in the accident. His treating physician has not explained in any detail why he believes the elbow and wrist conditions are related to the compensable injury. However, the record contains opinions from four other physicians who examined Mr. Scott and determined that cubital and carpal tunnel syndrome are not related to the compensable injury. The Office of Judges therefore concluded that a preponderance of the evidence shows that the conditions are not compensable and that the diagnosis testing for them was properly denied. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on June 23, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Scott did not report symptoms of either carpal or cubital tunnel syndrome until well over a year after the compensable injury occurred. No detailed explanation has been given relating the conditions to the compensable injury; however, several physicians of record reliably found that the conditions were not the result of the compensable injury. Therefore, the conditions were properly denied as was the EMG which was necessitated by the non-compensable conditions.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 7, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

4